MICHAEL A. PRESBY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Presby v. Commissioner
Docket No. 23695-93
United States Tax Court
T.C. Memo 1995-221; 1995 Tax Ct. Memo LEXIS 225; 69 T.C.M. (CCH) 2648; May 22, 1995, Filed *225 Decision will be entered under Rule 155. Held: Except for $ 900 spent by P in 1989 for fliers, junior tennis racquets, and nerf balls used in Pee Wee and Munchkin tennis programs which P conducted for young juveniles, P failed to carry his burden of proving his entitlement to various deductions and credits. Held, further, P is liable for the accuracy-related negligence penalty under sec. 6662(a), I.R.C., for 1989 and 1990. Michael A. Presby, pro se. For respondent: Elaine L. Sierra. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6662(a)
1989
$ 14,211
$ 2,739
1990
7,449
1,490
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by the parties, the issues for decision are: (1) Whether petitioner is entitled to deduct losses from a management consulting activity for the taxable years 1989 and 1990 in the amounts of $ 16,600 and $ 11,027, respectively, and losses *226 from a tennis instruction activity for the taxable years 1989 and 1990 in the amounts of $ 10,078 and $ 11,144, respectively. (2) Whether for 1989 petitioner is entitled to deduct medical expenses in the amount of $ 10,500, which represent amounts that he paid to Janey Matt-Jones and her father to reimburse them for the costs incurred by Janey Matt-Jones in giving birth in 1986 to her daughter, Julia Jones, whom petitioner had fathered. (3) Whether petitioner is entitled to deduct moving expenses in excess of the amount allowed by respondent for the taxable year 1990. (4) Whether petitioner is entitled to a child care credit in the amount of $ 480 for the taxable year 1990. (5) Whether petitioner is liable for the additions to tax for negligence under sections 6662(a) and (c) for the taxable years 1989 and 1990. Because of the confused state of the record, findings of fact and opinion have been combined for purposes of clarification. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time he filed his petition. In 1973, petitioner *227 earned a bachelor of arts degree in Management and Production Operations from California State University, Fullerton. In 1977, petitioner earned a bachelor of science degree in Industrial Engineering from California Polytechnic Institute. From 1976 through 1990, petitioner has worked as an industrial engineer for various companies. During the years before the Court, petitioner was employed full-time as a senior industrial engineer. He was employed by ELXSI, Inc., until May 1989, and thereafter by Devices for Vascular Intervention (DVI). Sometime around 1985, petitioner attempted to develop computer software for a work labor management system and an inventory control system. Petitioner claims that he provided management consulting services on an independent basis from 1985 through 1990 in addition to being a full-time salaried employee. Petitioner asserts that he reported the following amounts of income and expense from industrial engineering, either as a common-law employee or as an independent consultant. Income
Year
Salaried
Independent
Total
Expenses
Net Income
1985
$ 38,849
$ 4,400
$ 43,249
$ 23,625
$ 19,624
1986
39,964
900
40,864
22,834
18,130
1987
38,468
2,125
40,593
24,270
16,323
1988
41,292
1,575
42,867
17,510
25,357
1989
41,665
7,348
49,013
23,948
25,065
1990
60,869
1,021
61,890
12,048
49,842
*228 Although petitioner testified that he purchased some computer equipment and hired some computer programmers in order to develop his software, the record does not contain any documentation that would verify or support petitioner's claimed expenses. Petitioner did not maintain a separate bank account for his management consulting activities. Additionally, except for his own testimony there is no evidence in the record that suggests that petitioner received any non-wage income from management consulting other then what was reported on the Schedule C attached to his 1989 return. Petitioner reported as "other expenses" on the management consulting Schedule C of his 1989 return the following: (1) Transfer to salary, $ 5,396; (2) transfer to dividend, $ 866; and (3) transfer to interest, $ 186. Respondent determined that the gross receipts in the amount of $ 7,348 reported by petitioner on his 1989 management consulting Schedule C included the three other expenses, and that these items were correctly reported elsewhere on petitioner's 1989 return, so the $ 7,348 figure was reduced by $ 6,448 and the deductions for transfers were reduced by a like amount. Sometime around 1986, petitioner *229 attempted to establish a business as a tennis instructor. Prior to 1989 his manner of teaching tennis was unprofessional and lacked a good methodology. In 1989, petitioner became a tennis professional certified by the United States Professional Tennis Registry. After becoming certified, petitioner started two programs designed to teach tennis to children: the Mr. Pee Wee Tennis program which was designed for children between the ages of 4 and 8, and the Munchkin Tennis program which was designed for children between the ages of 8 and 12. The two programs were conducted in conjunction with a local YMCA. Petitioner recruited children for his two tennis programs by distributing fliers to local schools and providing free junior tennis rackets to any student who enrolled. For the years 1986 through 1990, petitioner reported the following amounts of income, expenses, and losses from a Schedule C activity called "Tennis Tech": Gross Income
Expenses
Net Income or Loss
1986
$ 1,680
$ 2,330
$ - 650
1987
1,750
6,059
- 4,309
1988
4,410
7,828
- 3,418
1989
3,400
13,478
- 10,078
1990
3,107
14,251
- 11,144
The record does not contain any evidence that would *230 substantiate petitioner's claimed tennis instruction expenses, other than his uncorroborated testimony that he purchased a stringing machine, a ball machine, and liability insurance, and that he spent $ 900 for fliers, junior tennis racquets, and special nerf (sponge) balls which he furnished as part of the program to the children he instructed. Petitioner did not maintain a separate bank account for his tennis instruction activities. In 1990, petitioner's full-time employer required him to move; thus, he was unable to continue the tennis programs that he had started the previous year. On his 1989 return, petitioner claimed medical and dental expenses in the amount of $ 15,916 which resulted in a claimed deduction in the amount of $ 13,112. Respondent disallowed petitioner's deduction in full but has since conceded that petitioner has verified expenses in the amount of $ 8,848, which petitioner had incurred in 1989 as the result of treatment for a back injury. Petitioner also claimed medical expenses in 1989 in the amount of $ 10,500, representing payments that petitioner made to Janey Matt-Jones (Janey) and her father in that year to reimburse them for the medical costs associated *231 with Janey's giving birth to Julia Jones (Julia) in 1986. Julia's birth required Janey to have a Caesarian operation. Although Julia is petitioner's daughter, petitioner and Janey have never been married, nor did they live together in 1989 or 1990. During 1989 and 1990, Janey lived with Julia in a house owned by Janey's father. In 1990, petitioner claimed a child care credit in the amount of $ 480 for expenses that he allegedly paid in order to provide child care for Julia. As stated above, petitioner's employer required petitioner to move to Southern California sometime in 1990. On a Schedule A attached to his 1990 return, petitioner claimed moving expenses in the amount of $ 8,354. In the notice of deficiency issued to petitioner, respondent allowed additional moving expenses in the amount of $ 720 because a Form 4782, Employee Moving Expense Information, prepared by DVI disclosed that the following amounts were paid by DVI: Amount paid to third party for
transportation of household goods
$ 4,042.56
Amount paid to petitioner for pre-move
travel and lodging
155.56
Amount paid to third party for pre-move
travel and lodging
556.00
Amount paid to petitioner for relocation
and car allowance
4,320.00
Total
9,074.12
*232 The wages that petitioner had received from DVI and reported on his 1990 return included the above-listed amounts that DVI paid for petitioner's relocation to Southern California. Allegedly in the course of moving, petitioner directly paid to the following parties the following amounts: (1) $ 2,172 to Starving Students (a professional moving company); (2) $ 790 to Kristine Hoffman (Hoffman); and (3) $ 2,147 to Bob Cummings (Cummings). Consequently, petitioner now claims that his deductible moving expenses for 1990 totaled $ 10,577.12 which exceeds the amount allowed by respondent by $ 1,503.12. According to petitioner, he needed the assistance of Cummings in order to move because in 1990 he, petitioner, was suffering from a back injury. Petitioner's personal records indicate that the amount paid by petitioner to Cummings included: (1) $ 447 for Cummings' airfare from New York; (2) $ 500 for services Cummings provided as a "moving coordinator"; (3) $ 250 for a "New Skin Membership"; (4) $ 650 for food and rent for three months; (5) $ 300 for coordinating the transportation of petitioner's car. The purpose of the $ 790 payment to Hoffman is not disclosed by the record. Petitioner *233 has the burden of proving that the adjustments set out in respondent's notice of deficiency are incorrect. Rule 142(a); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133. As a taxpayer, petitioner is required to maintain adequate records to substantiate any item of income or deduction claimed on his returns. Sec. 6001; see Williams v. Commissioner, T.C. Memo. 1986-195. Petitioner and his return preparer, Allen M. Nelson, C.T.P. (who signed petitioner's returns, assisted petitioner at trial and, it would appear, on brief) appear to be under the impression that respondent and this Court should simply accept the deductions and credits claimed by petitioner on his tax returns, unless respondent can prove them wrong. But in Rockwell v. Commissioner, supra, the Court of Appeals for the Ninth Circuit explained the reason why, under ordinary circumstances (as here), the burden of proof is on the taxpayer: [the taxpayer] can * * * testify as to what his intent or purpose was. The Commissioner, on the other hand, must rely on *234 circumstantial evidence, most of it coming from the taxpayer and the taxpayer's records, in deciding whether or not to assert a deficiency. It is not at all unfair, in such a case, to place on the taxpayer the burden of persuading the trier of fact, in this case the Tax Court. [Id. at 887.]
At trial, petitioner introduced no evidence to support his claimed deductions and credits beyond the facts that were stipulated and his own largely self-serving testimony. At the commencement of the trial, he sought to introduce as a package what were described as 111 documents which had previously been mailed to the Tax Court, ex parte, and returned to petitioner. Respondent refused to stipulate most of these on the ground that they constituted correspondence between petitioner or Nelson and various administrative officers within the IRS, and objected to their introduction into evidence. In addition to their misapprehensions about the burden of proof, petitioner and his adviser also appear to believe that a trial before this Court is merely a continuation of the audit process, as demonstrated by petitioner's efforts to introduce the above-mentioned material. *235 It has long been held, however, that a trial before the Tax Court is a proceeding de novo and that our determination must be based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974); see also, e.g., Jones v. Commissioner, T.C. Memo. 1994-230. Consequently, petitioner's 111 documents would not be relevant for the purpose of establishing petitioner's entitlement to the deductions and credits claimed. See, generally, Fed. R. Evid. 401-415. Petitioner claimed Schedule C losses from a management consulting activity in the respective amounts of $ 16,600 and $ 11,027 for 1989 and 1990. Since petitioner did not present any evidence concerning this issue, he failed to meet his burden of proof, and respondent's determination is sustained. Petitioner claimed Schedule C losses from a tennis instruction activity in the respective amounts of $ 10,078 and $ 11,144 for 1989 and 1990. The parties stipulated that in those years petitioner was engaged in a tennis program to teach basic tennis to beginners using a Mr. Pee *236 Wee Tennis program aimed at 4- to 8-year-olds, and a Munchkin Tennis program aimed at 8- to 12-year-olds. Petitioner testified that the programs were conducted in conjunction with a local YMCA. He also testified that he advertised his program by distributing fliers and donating junior tennis racquets and nerf balls to the children which he, himself, paid for at a cost of $ 900. Respondent has conceded that petitioner was engaged in the tennis activity, and if such was the case it appears likely that petitioner incurred some expenses in connection with it. However, since he presented no records to support his claimed deductions, the Court must make as close an approximation of those expenses as it can, bearing heavily if appropriate upon petitioner whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928). Given the wildly exaggerated amounts claimed by petitioner in connection with this and his consulting activity without a shred of evidence other than his own testimony to support them, the fact that petitioner claimed a mere $ *237 900 as the cost of fliers, junior racquets, and nerf balls has a certain ring of truth about it. Therefore, without totally surrendering our sense of skepticism about the validity of all of petitioner's claims, we hold that petitioner may deduct $ 900 in 1989 in connection with his Mr. Pee Wee and Munchkin programs. Section 213(a) entitles a taxpayer to an itemized deduction for medical expenses paid during the taxable year for himself, a spouse, or a dependent (as defined by section 152), to the extent that the expenses exceed 7.5 percent of the taxpayer's adjusted gross income. In 1989, petitioner paid $ 10,500 to Janey and her father to reimburse them for the medical costs incurred by Janey in giving birth to Julia in 1986. Because the expenses were not incurred for the medical treatment of petitioner, we must determine: (1) For whom the medical expenses were incurred; and (2) whether that person was petitioner's dependent. Sec. 1.213-1(a)(3)(i), Income Tax Regs.
(We note that under section 213(a) and section 1.213-1(a), Income Tax Regs., the 1989 taxable year during which petitioner paid for the expenses is the relevant year, not 1986, the year in which the medical treatment *238 was incurred. In this connection, sec. 1.213-1(a)(1), Income Tax Regs., provides in relevant part that "a deduction is allowable only to individuals and only with respect to medical expenses actually paid during the taxable year, regardless of when the incident or event which occasioned the expenses occurred".) Respondent contends that the expenses were paid for Janey, who was neither petitioner's spouse nor his dependent. Petitioner argues that the expenses were incurred for his daughter Julia who, he claims, was his dependent. Petitioner concedes that Janey was never his dependent. Petitioner testified that a Caesarian operation was required when Janey gave birth to Julia, that he was unable to collect anything from his insurance company, which went out of business without paying, and that he reimbursed Janey's parents for the medical expenses they incurred. There is nothing in the record to support petitioner's claim that the payments were for Julia's, not Janey's, medical expenses. Furthermore, all of the stipulated doctors' and hospital bills were submitted to Janey Matt-Jones, the "responsible party" according to the bills. Consequently, we hold that petitioner is not *239 entitled to deduct the amounts for which he reimbursed Janey and her father in 1989. In 1990, DVI paid to petitioner and to third parties on petitioner's behalf a total of $ 9,074.12 as compensation for petitioner's moving from Northern California to Southern California. Petitioner claimed moving expenses in the amount of $ 8,354 on a Schedule A filed with his 1990 return. Respondent has since allowed additional expenses in the amount of $ 720, which represents the excess of the amount DVI paid over the amount petitioner claimed on the Schedule A filed with his 1990 return. Petitioner now claims expenses in the amount of $ 10,577.12, which exceeds the amount allowed by respondent by $ 1,503.12 Subject to certain requirements not relevant here, section 217 permits a deduction for all reasonable moving expenses incurred by an employee in relocating to another city. Whether a claimed moving expense is reasonable is a question of fact to be determined under the circumstances of the particular move. Sec. 1.217-2(b)(2)(i), Income Tax Regs.
Petitioner argues that it was necessary for him to pay Cummings' airfare from New York to California as well as Cummings' various living expenses *240 for three months because petitioner was suffering from a back injury and required a "moving coordinator". Petitioner allegedly paid Cummings a total of $ 2,147. Even if we accept as true petitioner's claim that his injury prevented him from "coordinating" the move himself, we find it troubling that petitioner has not offered any explanation as to why it was necessary to fly an individual from New York to California to perform this function. Equally unexplained is the reason why, in addition to paying Cummings for his alleged services as a moving coordinator, petitioner also paid Cummings' living expenses for 3 months. To the extent petitioner required assistance in packing, moving, and/or unpacking, it would have been reasonable to employ the services of local moving professionals. Consequently, we cannot hold that the payments to Cummings were reasonable. Additionally, the record is wholly silent as to the purpose of the $ 790 payment to Hoffman. Therefore, we hold that petitioner is not entitled to moving expenses in excess of that amount allowed by respondent in her notice of deficiency. Petitioner claimed a child care credit for the taxable year 1990 in the amount of $ *241 480. On a Form 2441, Child and Dependent Care Expenses, submitted with his 1990 return, petitioner claimed that he paid $ 5,102 to a person identified as Jones (presumably Janey) for the care of Julia. In her notice of deficiency, respondent disallowed the credit on the grounds that petitioner had failed to establish that he maintained a household which included a dependent under the age of 15 and that he had actually paid the amount claimed. Section 21(a) allows a credit against the tax to any individual who maintains a household that includes as a member one or more qualifying individuals. The term "qualifying individual", under section 21 (b), includes a dependent of the taxpayer under the age of 13 with respect to whom the taxpayer is entitled to a dependency deduction under section 151(c). Formerly, the child care credit was provided by section 44A, which was redesignated as section 21 by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 484, 826, applicable to tax years beginning after December 31, 1983. In order to qualify for the child care credit, the taxpayer and the qualifying individual must have the same household as their principal place *242 of abode. Sec. 1.44A-1(d)(1), Income Tax Regs.
Petitioner admitted that Julia did not reside with him during 1989 or 1990. Thus in 1990 petitioner did not maintain a household that included his alleged dependent, and is therefore not entitled to claim a child care credit for 1990. Respondent determined that petitioner is liable for the accuracy-related penalty due to negligence under section 6662(a) for 1989 and 1990. Petitioner bears the burden of proving that the addition to tax provided by section 6662(a) does not apply. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner did not present any argument that he was not negligent in computing his tax liability for 1989 and 1990; rather, in what bears the earmarks of a tax protester-type argument, petitioner asserts that section 6662 has not been ratified by Congress for use in the administration of the individual income tax under Title 26 of the United States Code. Petitioner does not offer any legal authority for this position, and we decline to consider it. We hold that petitioner has not met his burden of proving that he was not negligent, and we sustain the addition to *243 tax under section 6662(a) to the extent determined by respondent. We have considered petitioner's remaining arguments and find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155.